

1                    UNITED STATES DISTRICT COURT
                     CENTRAL DISTRICT OF CALIFORNIA
2                    WESTERN DIVISION – LOS ANGELES

3

4      EMILIO GARCIA,                 )
                                      )
5                     Plaintiff,      )
                                      )
6            vs.                      )   Case No. 2:24-CV-04448-HDV-SSC
                                      )
7      ROC NATION LLC, ET AL.,        )      Los Angeles, California
                                      )        September 12, 2024
8                     Defendants      )
                                      )        (10:41 a.m. to 11:03 a.m.)
9      _____  )

10

11

12

13                        HEARING ON MOTIONS

14             BEFORE THE HONORABLE HERNAN D. VERA
                  UNITED STATES DISTRICT JUDGE

15

16

17

18     APPEARANCES:              See Next Page

19     COURT REPORTER:           Recorded, Court Smart

20     COURTROOM DEPUTY:         Wendy Hernandez

21     TRANSCRIBER:              Dorothy Babykin
                                 Courthouse Services
22                               1218 Valebrook Place
                                 Glendora, California  91740
23                               (626) 963-0566

24
       PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.
25     TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.

1    APPEARANCES:

2

3    FOR PLAINTIFF EMILIO GARCIA.:

4         WEST COAST EMPLOYMENT LAWYERS APLC
          BY:  RONALD L. ZAMBRANO
5              ATTORNEY AT LAW
          1147 SOUTH HOPE STREET
6         LOS ANGELES, CALIFORNIA  90015

7

8    FOR DEFENDANT ROC NATION LLC:

9         REED SMITH LLP
          BY:  MICHAEL R. KLEINMANN
              ATTORNEY AT LAW
10        355 SOUTH GRAND AVENUE
          SUITE 2900
11        LOS ANGELES, CALIFORNIA  90071

12        REED SMITH LLP:
          BY:  JORDAN W. SIEV
13             ATTORNEY AT LAW
          599 LEXINGTON AVENUE
14        22ND FLOOR
          NEW YORK, NEW YORK  10022

15

16

17   FOR DEFENDANT HOT GIRL TOURING AND MEGAN THEE STALLION
     ENTERTAINMENT, INC. :

18

19        QUINN EMANUEL URQUHART AND SULLIVAN:
          BY:  MARI F. HENDERSON
               JULIAN SCHOEN
20             ATTORNEYS AT LAW
          865 SOUTH FIGUEROA STREET
21        10TH FLOOR
          LOS ANGELES, CALIFORNIA   90017

22

23

24

25

1

2                                    I N D E X

3

4       2:24-CV-04448-HDV-SSC                          SEPTEMBER 12, 2024

5       PROCEEDINGS:   MOTION TO DISMISS (22)
                        MOTION TO TRANSFER (23)
6                       MOTION TO DISMISS DEFENDANT (25)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com

1          LOS ANGELES, CALIFORNIA; SEPTEMBER 12, 2024; 10:41 A.M.

2          THE CLERK:   CALLING ITEM 3, CIVIL 24-4448, EMILIO GARCIA

3     VERSUS ROC NATION.

4          COUNSEL, PLEASE STATE YOUR APPEARANCES.

5          MR. ZAMBRANO:  GOOD MORNING, YOUR HONOR.

6          THIS IS RON ZAMBRANO FOR THE PLAINTIFF.

7          THE COURT:   GOOD MORNING.

8          MR. KLEINMANN:  GOOD MORNING, YOUR HONOR.

9          MIKE KLEINMANN FOR ROC NATION.

10         THE COURT:   GOOD MORNING.

11         MR. SIEV:  GOOD MORNING, YOUR HONOR.

12         JORDAN SIEV ALSO FOR ROC NATION.

13         THE COURT:   GOOD MORNING.

14         MS. HENDERSON:  GOOD MORNING, YOUR HONOR.

15         MARI HENDERSON AND JULIAN SCHOEN FOR DEFENDANTS

16    MEGAN THEE STALLION, MEGAN THEE STALLION ENTERTAINMENT AND

17    HOT GIRL TOURING.

18         THE COURT:   ALL RIGHT.   GOOD MORNING TO EVERYONE.

19         WE'RE HERE ON THREE SEPARATE MOTIONS – MOTIONS TO

20    DISMISS BY MS. PEAT AND ROC NATION; BUT ALSO A MOTION TO

21    TRANSFER.

22         LET ME GIVE YOU MY JUST VERY BRIEF TENTATIVE THOUGHTS

23    ON THIS TO GUIDE THE ARGUMENT.

24         I AM INCLINED TO FOCUS MORE ON THE MOTION TO TRANSFER.

25         I THINK THAT THE JURISDICTIONAL ARGUMENTS ARE TOUGHER.

1    AND I WOULD BE INCLINED UPON FIRST READING OF THE BRIEFS TO THINK

2    THAT THERE WOULD BE ENOUGH.

3         BUT THE MOTION TO TRANSFER -- I MEAN, THE FORUM

4    SELECTION CLAUSE I DON'T REALLY SEE A WAY OUT OF IT.

5         AND, SO, I WANT TO ASK MR. ZAMBRANO TO ADDRESS THAT, THE

6    ARGUMENTS THAT -- THAT YOU'VE MADE ON THIS ESSENTIALLY ARE THAT

7    YOU WOULD HAVE NO RELIEF.   THAT IT WOULD BE UNFAIR BECAUSE THE

8    LAW IN NEW YORK WOULDN'T REALLY ALLOW YOU TO -- TO ASSERT THESE

9    CLAIMS.

10        THEY COME BACK AND SAY WELL, THAT'S A CHOICE OF LAW

11   ISSUE RATHER THAN A QUESTION ABOUT UNCONSCIONABILITY OF -- OF

12   THE FORUM SELECTION CLAUSE ITSELF.

13        SO, WHAT'S -- WHAT'S YOUR RESPONSE TO THAT?

14        MR. ZAMBRANO:   A CLAUSE -- A CLAUSE THAT WOULD PUT ANY

15   PLAINTIFF IN A FORUM WHERE THEY HAVE NO RELIEF IS IN ITSELF

16   UNCONSCIONABLE.   THAT'S MY ARGUMENT.

17        THE COURT:   REALLY?  NO RELIEF. I FIND THAT --

18        YOU KEEP -- YOU JUST SAY THAT, BUT --

19        MR. ZAMBRANO:  I'M NOT --

20        THE COURT:   -- NEW YORK HAS NO LAWS THAT WOULD ALLOW

21   FOR DISCRIMINATION OR WAGE CLAIMS.

22        NOTHING?

23        MR. ZAMBRANO:   THEY DO IF YOU ARE A NEW YORK RESIDENT.

24   ABSOLUTELY.

25        AND THIS IS A JURISDICTIONAL ISSUE.   I'VE COME ACROSS THIS

1    BEFORE.

2        THE PARTIES CANNOT WAIVE THIS JURISDICTIONAL ISSUE.   THE

3    STATE OF NEW YORK HAS TO WAIVE IT.

4        SO, ANY PARTY THAT IS NOT A NEW YORK RESIDENT -- AND WE

5    PUT THE CASE LAW THAT THIS WAS JUST RECENTLY RELITIGATED IN THE

6    -- IN NEW YORK'S HIGHEST COURT THAT YOU HAVE TO BE A NEW YORK

7    RESIDENT TO AVAIL YOURSELF OF NEW YORK WAGE AND HOUR LAWS AND

8    ALSO THE DISCRIMINATION LAWS.

9        IF YOU ARE NOT, UNDER THE HOFFMAN CASE -- AND THERE'S A

10    LATER CASE WHOSE NAME I DON'T REMEMBER BUT IT'S CITED IN THE

11    BRIEF – THE OPPOSITION, RATHER, YOU HAVE NO RIGHTS.  YOU --

12        SO, IF -- SURE.  THE FORUM SELECTION CLAUSE I GET.

13        YOU'RE GOING TO A FORUM.   I'M NOT GETTING OUT OF THAT.

14        BUT THE FORUM HAS TO ALLOW -- IF YOU'RE -- ONCE YOU'RE

15    THERE YOU'RE LIKE OKAY.   WELL, WHAT LAWS APPLY TO ME.

16        AND SHE'S GOING TO BE IN NEW YORK.   AND DEFENDANTS ARE

17    GOING TO GO WELL, IT'S NOT NEW YORK LAW BECAUSE RON JUST TOLD

18    US -- MR. ZAMBRANO TOLD US BACK IN CALIFORNIA YOU HAVE NO RIGHTS

19    UNDER HOFFMAN.

20        SO, IF SHE GOES -- EXCUSE ME, IF MR. GARCIA GOES, MY CLIENT

21    GOES TO NEW YORK, OKAY.   THAT'S FAIR.  I UNDERSTAND THAT'S, YOU

22    KNOW, A TECHNICAL READ-IN -- READING OF WHAT'S GOING ON.   BUT HE

23    HAS NO LAWS TO APPLY.

24        EVEN IF THEY WERE TO WAIVE IT HERE IN OPEN COURT, NEW

25    YORK WOULDN'T CARE.   THEY WOULD BE LIKE THIS IS A JURISDICTIONAL

1    ISSUE.   OUR SUPREME COURT HAS INTERPRETED OUR LEGISLATIVE

2    SYSTEM BASED ON EMPLOYMENT RIGHTS HERE.

3           AND UNLESS YOU'RE -- AND HOFFMAN SAYS, UNLESS YOU'RE A

4    NEW YORK RESIDENT YOU DON'T HAVE RIGHTS, EMPLOYMENT RIGHTS IN

5    NEW YORK.

6           SO, TO ANSWER YOUR QUESTION, YOUR HONOR, YES, THERE

7    ARE RIGHTS FOR NEW YORK RESIDENTS BUT NOT FOR OUT-OF-STATE

8    NEW YORK RESIDENTS.

9           AND ANY FORUM SELECTION CLAUSE BY ANYONE OUTSIDE OF

10   NEW YORK THAT IS ENFORCED FOR THAT -- FOR THAT PERSON TO GO TO

11   NEW YORK IS UNCONSCIONABLE BECAUSE THEY HAVE NO RIGHTS THERE.

12          THE COURT:   ALL RIGHT.   THE HOFFMAN CASE WASN'T REALLY

13   ON POINT.

14          DO YOU HAVE ANY -- I WOULD THINK THAT THIS SHOULD HAVE

15   BEEN LITIGATED MANY TIMES IF -- IF WHAT YOU'RE SAYING IS RIGHT.   AND

16   THERE'S NO REMEDY THAT A CASE SHOULD SAY WELL, THAT BLEEDS INTO

17   UNCONSCIONABILITY.  BUT I DIDN'T SEE ANY.

18          SO, IT SEEMS LIKE A NOVEL ARGUMENT TO SAY WELL, YOU NEED

19   TO ANALYZE WHAT REMEDIES ARE THERE AND THEN --

20          MR. ZAMBRANO:  I -- I DON'T --

21          THE COURT:  -- SEE IF IT --

22          MR. ZAMBRANO:  I'M SORRY.  NOT TO INTERRUPT YOU, YOUR

23   HONOR.

24          I DON'T HAVE TO.  THEY HAVE TO.  THEY'RE THE MOVING

25   PARTY.

1          THEY'RE THE MOVING PARTY WHO WANTS TO GO TO NEW YORK.

2          SO, THEY HAVE TO -- THEY HAVE TO IN THEIR MOVING PAPERS

3   SAY, OH, YOU KNOW WHAT.   THE PLAINTIFF WHO WE ARE GOING TO --

4   WE'RE SAYING SHOULD BE IN NEW YORK WILL HAVE THESE LAWS

5   AVAILABLE TO THEM.

6          THE COURT WHO IS SUPPOSED TO ORDER THAT PERSON TO GO

7   TO -- THEY HAVEN'T DONE THAT.   THEY HAVE ONE SENTENCE GOING

8   WELL, NEW YORK SHOULD BE ABLE TO PROVIDE SUBSTANTIAL JUSTICE.

9   THAT WAS IN THE REPLY.

10         THE COURT:   WELL, THIS COURT DISAGREES.

11         YOU HAVE THE BURDEN TO SHOW THAT THE CLAUSE IS

12  UNENFORCEABLE.   THE CLAUSE IS THERE.

13         AND, SO, I'M ASKING YOU WHY YOU BELIEVE IT'S

14  UNENFORCEABLE.

15         AND YOUR POINT IS THAT YOU THINK YOU'D HAVE NO REMEDIES

16  THERE.

17         AND WHAT'S THE BASIS FOR THAT.

18         AND YOU KEEP SAYING YOU HAVE NO -- YOU WOULD HAVE NO

19  BASIS TO -- TO ASSERT THE CLAIMS.

20         BUT I DON'T SEE ANY OTHER CASES AROUND THE COUNTRY

21  THAT HAVE STRUCK FORUM SELECTION CLAUSES ON THAT BASIS.

22         ARE THERE?

23         MR. ZAMBRANO:   I CITED TWO.   ONE FOR A VIRGINIA CLAUSE

24  FOR A CALIFORNIA PLAINTIFF AND A TEXAS CLAUSE FOR A CALIFORNIA

25  PLAINTIFF.

1          AND THEY WERE BOTH STRUCK BECAUSE THE -- BECAUSE OF

2    THE SAME CONDITIONS WE'RE TALKING ABOUT HERE.

3          AND I'M HAPPY TO CITE THEM, YOUR HONOR.   I – I LEFT THAT

4    DOCUMENT ONLINE.

5          THE COURT:   NO.  WITH -- WITH THAT STATE I'M SURE WE CAN

6    FIND THEM IN THE BRIEFS.

7          BUT ANYTHING ELSE THAT YOU WOULD HIGHLIGHT ON THIS

8    ISSUE?

9          YOU CAN MAKE ANY ARGUMENTS THAT YOU'D LIKE ON THE

10   JURISDICTION.   BUT I'LL GIVE YOU A CHANCE TO HAVE THE LAST WORD

11   ON THIS.

12         SO, IS THERE ANYTHING THAT YOU WANT TO HIGHLIGHT IN THE

13   FIRST INSTANCE?

14         MR. ZAMBRANO:   NO, YOUR HONOR.

15         THANK YOU.

16         THE COURT:   ALL RIGHT.

17         THANK YOU.

18         LET ME HEAR FROM DEFENDANTS ON THIS ISSUE.

19         AND IF YOU COULD PLEASE START WITH THE TRANSFER ISSUES

20   AND THE FORUM SELECTION CLAUSE.

21         MS. HENDERSON:   YES, Y0UR HONOR.

22         SO, AS YOU'VE CORRECTLY NOTED, THE BURDEN HERE IS ON

23   PLAINTIFF TO PROVE THAT THIS FORUM SELECTION CLAUSE WOULD BE

24   UNENFORCEABLE.

25         AND PLAINTIFF SIMPLY CANNOT MEET THAT BURDEN.

1              UNDER THE <u>ATLANTIC MARINE</u> CASE, A FORUM SELECTION

2    CLAUSE IS TO BE ENFORCED IN ALL BUT THE MOST EXCEPTIONAL OF

3    CASES.

4              AND THIS IS JUST NOT ONE OF THOSE EXCEPTIONAL CASES.

5              PLAINTIFF CONTINUES TO FOCUS TIME AND AGAIN ON THE

6    CHOICE OF LAW AND CITES BACK TO <u>HOFFMAN</u> WHERE THERE WAS NO

7    FORUM SELCTION CLAUSE.   THERE WAS NO CONTRACT LIKE HERE

8    WHERE THE PARTIES NEGOTIATED TO HAVE THE CASE OR ANY CLAIMS

9    ARISING OUT OF THE CONTRACT LITIGATED IN NEW YORK.

10             AND THE QUESTION OF WHAT LAW APPLIES, WHETHER IT BE

11   NEW YORK OR WHETHER IT BE CALIFORNIA LAW IS NOT BEFORE YOU

12   TODAY.  THAT'S THE QUESTION THAT THE RECEIVING COURT WILL -- WILL

13   HANDLE.

14             YOU AS THE TRANSFER COURT, THE ONLY QUESTION BEFORE

15   YOU IS WHETHER THERE IS A VALID --- A VALID FORUM SELECTION

16   CLAUSE.

17             AND PLAINTIFF HAS DONE NOTHING TO SHOW THAT THIS FORUM

18   SELECTION CLAUSE IS IN ANY WAY INVALID.

19             AND I BELIEVE THAT --

20             THE COURT:   WELL, BUT -- BUT ADDRESS HIS POINT THOUGH.

21             IS HE WRONG ON THAT?   OR WOULD YOU CONCEDE THAT IF

22   NEW YORK LAWS APPLY THAT HE ESSENTIALLY WOULD HAVE NO

23   DISCRIMINATION CLAIM AND NO WAGE CLAIMS UNDER NEW YORK LAW?

24             MS. HENDERSON:   WE DON'T AGREE WITH THAT BECAUSE THE

25   PURPOSE OF THE FORUM SELECTION CLAUSE AND THE CHOICE OF LAW

1    PROVISION IN THERE IS THAT DEFENDANTS MEGAN THEE STALLION AND

2    HER ENTITIES HAVE AGREED THAT NEW YORK LAW DOES APPLY.

3              SO, WHY WOULD WE GET TO NEW YORK AND SAY, OKAY.  NOW,

4    THE CASE HAS BEEN TRANSFERRED TO NEW YORK.   BUT NOW NEW YORK

5    LAW DOESN'T APPLY TO YOU.

6              THE COURT:  NO.  THAT -- NO.

7              WHAT I'M SAYING IS IF I UNDERSTAND PLAINTIFF'S ARGUMENT

8    CORRECTLY, YOU'RE GOING TO GET TO NEW YORK.   AND YOU'RE GOING

9    TO ARGUE THAT NEW YORK LAW APPLIES.

10             AND YOU'RE GOING TO SAY BECAUSE NEW YORK LAW APPLIES,

11   HE HAS NO BASIS TO CLAIM EITHER WAGES OR DISCRIMINATION BECAUSE

12   HE'S NOT A NEW YORK RESIDENT.   EVEN THOUGH WE FORCED HIM TO

13   SIGN A FORUM SELECTION CLAUSE THAT IDENTIFIES NEW YORK.

14             SO, IS HE WRONG IN MAKING THAT STATEMENT?

15             MS. HENDERSON:   HE WOULD BE WRONG IN MAKING THAT

16   STATEMENT BECAUSE THAT WOULD INVALIDATE -- WHAT WOULD BE THE

17   PURPOSE OF THE FORUM SELCTION CLAUSE AND THE CHOICE OF LAW

18   PROVISION IF WE WERE TO THEN GET TO NEW YORK AND SAY YOU HAVE

19   NO REMEDIES AVAILABLE HERE.

20             WE HAVE ALL AGREED THAT THE REMEDIES AVAILABLE WOULD

21   BE IN NEW YORK AND UNDER NEW YORK LAW.

22             BUT AS AN ASIDE, HE CERTAINLY DOESN'T HAVE CALIFORNIA

23   LAW AVAILABLE TO HIM HERE BECAUSE CALIFORNIA WAGE AND HOUR

24   LAW, CALIFORNIA FEHA PROVISIONS, THOSE DON'T APPLY TO THIS

25   NON-CALIFORNIA CITIZEN WHO DID THE MAJORITY OF HIS WORK OUTSIDE

1   OF CALIFORNIA.

2              SO, I KNOW THAT'S A SEPARATE ISSUE.

3              BUT AS TO THE ISSUE OF TRANSFER, IT'S A SIMPLE QUESTION

4   OF WHETHER THERE'S A VALID FORUM SELECTION CLAUSE HERE.  AND

5   THERE IS.

6              AND THE TWO CASES THAT HE CITED WHERE THE -- A

7   CALIFORNIA COURT INVALIDATED A VIRGINIA FORUM SELECTION CLAUSE

8   AND A TEXAS FORUM SELECTION CLAUSE.

9              THAT'S WHERE THE CALIFORNIA COURT DECIDED THAT FOR ITS

10  OWN CALIFORNIA CITIZENS THERE WAS A PUBLIC POLICY ARGUMENT AND

11  REASON WHY THAT WAS UNFAIR TO ITS OWN CITIZENS.  SO, CALIFORNIA

12  PROTECTS ITS CITIZENS.

13             MR. GARCIA IS A CITIZEN OF TEXAS.   HE DOES NOT DENY THAT

14  FACT.  THAT IS NOW AN UNCONTESTED FACT.

15             AND, SO, IT WOULD BE TRULY UNPRECEDENTED FOR A

16  CALIFORNIA COURT TO SAY THAT THEY WOULD NOT TRANSFER A CASE TO

17  NEW YORK UNDER A VALID CONTRACT AND WOULD KEEP IT IN CALIFORNIA

18  FOR PUBLIC POLICY REASONS THAT APPLY TO A TEXAS CITIZEN.

19             THAT'S NOT HOW ANY OF THE LAWS WERE DESIGNED AND

20  CERTAINLY WOULD FLY IN THE FACE OF THE PURPOSE OF CONTRACTING

21  FOR THESE AGREEMENTS IN THE FIRST PLACE.

22             THIS WAS A VALID CONTRACT THAT WAS SIGNED FOUR YEARS

23  AGO.

24             PLAINTIFF'S ATTORNEY DID NOT EVEN KNOW OF THE CONTRACT

25  WHEN THE CASE WAS FILED.

1          WE ACTUALLY BROUGHT IT TO THEIR ATTENTION IN MAY.

2          AND WE ASKED AT THAT TIME WILL YOU VOUNTARILY DISMISS

3   AND REFILE THE CASE IN NEW YORK.   AND WE CAN LITIGATE IT IN THE

4   PROPER FORUM.

5          THEY REFUSED.

6          SO, NOW HERE WE ARE HOURS LATER AND MOTIONS LATER ON

7   WHAT I THINK IS A NEEDLESS MOTION PRACTICE AND A SIMPLE QUESTION

8   OF WHERE THIS CASE BELONGS.   AND IT BELONGS UNDER THE

9   CONTRACT IN NEW YORK.

10         THE COURT:   SO, IF -- IF I ADOPT THAT ARGUMENT, WHAT

11  HAPPENS WITH ROC NATION?

12         THEY – THEY WEREN'T A PART OF THAT AGREEMENT, RIGHT?

13         MS. HENDERSON:   SO, I WILL NOT BE ADDRESSING ROC NATION

14  TODAY.   I WILL TURN THAT OVER TO MY CO-COUNSEL.

15         BUT THE MOTION TO TRANSFER WAS BROUGHT BY THE PROPER

16  DEFENDANTS IN THIS CASE.   AND THE CASE WOULD BE TRANSFERRED TO

17  NEW YORK.

18         THE MOTION TO DISMISS AS TO ROC NATION IS BEFORE YOU

19  TODAY AND CAN PROPERLY BE DECIDED BEFORE YOU TODAY.

20         AND AS TO THE PERSONAL JURISDICTION, IF YOU TRANSFERRED

21  THE CASE TO NEW YORK, THEN, THAT OF COURSE WOULD BE MOOT.

22         OUR ONLY ARGUMENT WAS IF FOR SOME REASON YOU WERE

23  INCLINED TO KEEP THIS CASE IN CALIFORNIA -- WHICH WE DON'T THINK IT

24  SHOULD BE, THEN, YOU WOULD HAVE TO DISMISS MEGAN THEE STALLION

25  AS A DEFENDANT BECAUSE THE COURT LACKS PERSONAL JURISDICTION

1    OVER HER.

2    THE COURT:   ALL RIGHT.   THANK YOU.

3    LET ME HEAR FROM ROC NATION'S LAWYER.

4    MS. HENDERSON:   THANK YOU.

5    MR. SIEV:  GOOD MORNING, YOUR HONOR.

6    JORDAN SIEV ON BEHALF OF ROC NATION.

7    SO, I THINK THE PROPER WAY FOR -- FOR THIS TO BE HANDLED

8    VIS-À-VIS ROC NATION IS FOR THE CASE TO BE DISMISSED HERE BY YOUR

9    HONOR BASED ON OUR MOTION.   THERE ARE A NUMBER OF GROUNDS.

10   AND I'M NOT IN THE HABIT OF GETTING UP AND RE-READING MY

11   BRIEFS.  I KNOW YOUR HONOR IS WELL PREPARED.   BUT THERE ARE A

12   FEW THINGS I WOULD LIKE TO POINT OUT VIS-À-VIS THE PLEADING

13   AGAINST ROC NATION.

14   AND IT'S IMPORTANT TO NOTE THE CONTEXT IN WHICH THIS

15   ARISES.

16   ROC NATION DOES NOT EMPLOY MEGAN THEE STALLION.

17   IT IS NOT AN OWNER OF EITHER OF HER COMPANIES THAT ARE

18   DEFENDANTS HERE.

19   NOBODY AT ROC NATION IS AN EMPLOYEE OF ANY OF THOSE

20   COMPANIES.

21   ROC NATION IS A MANAGEMENT COMPANY IN THIS CONTEXT.   IT

22   MANAGES MEGAN THEE STALLION.   IT MANAGES HUNDREDS OF OTHER

23   ARTISTS AND ATHLETES.

24   AND LIKE ALL MANAGERS, IT SOMETIMES GETS INVOLVED IN THE

25   DAY-TO-DAY OF COMMUNICATING DECISIONS MADE BY MEGAN IN THIS

1    CASE TO CLIENTS OR PERSONS.

2         WE NEVER HAD A CONTRACT AS YOUR HONOR HAS SEEN WITH

3    THE PLAINTIFF.

4         WE NEVER PAID HIM.

5         WE NEVER ISSUED HIM A 1099.

6         BUT MOST IMPORTANTLY I'D LIKE TO SHOW

7    CONTEMPORANEOUS EVIDENCE THAT THE PLAINTIFF HAS CHOSEN TO

8    SUBMIT IN OPPOSITION TO THIS MOTION THAT I THINK SEALS THE DEAL,

9    YOUR HONOR.

10        IN DOCUMENT 28-1, FILED AUGUST 1ST, WHICH IS MR. GARCIA'S

11   DECLARATION, HE SAYS IN A NUMBER OF DIFFERENT PLACES SUCH AS

12   PARAGRAPH 4 THAT HE WAS EMPLOYED -- WITH DEFENDANT MEGAN THEE

13   STALLION.

14        PARAGRAPH 17, HE WORKED UNDER THE CLOSE SCRUTINY AND

15   EXPLICIT  -- IT SAYS DISCRETION.   I THINK IT MEANS DIRECTION OF MEGAN

16   THEE STALLION WHO CONTINUALLY CONTACTED HIM.

17        PARAGRAPHG 18, MEGAN THEE STALLION CONTROLLED AND

18   DIRECTED THE PERFORMANCE OF MY WORK.

19        AND THIS IS ALL CONSISTENT WITH THE BRIEF AND THE

20   COMPLAINT.   WE'VE LAID IT OUT IN PARAGRAPHS 22 THROUGH 27 OF THE

21   COMPLAINT, PAGE 1 AND 6 OF THE BRIEF.

22        BUT, YOUR HONOR, I WOULD LIKE TO POINT OUT ONE THING.

23        ATTACHED TO MR. GARCIA'S AFFIDAVIT ARE SOME EMAILS,

24   CONTEMPORANEOUS EMAILS BETWEEN HIMSELF AND FOLKS AT ROC

25   NATION.

1      AND WITHOUT GOING INTO READING, YOU KNOW, 10 PAGES OF

2   EMAILS, IF YOUR HONOR GOES TO DOCUMENT 28-1 AT PAGE 30 OF 40

3   THERE'S AN EMAIL OF AUGUST 26, 2022 -- SO, RIGHT IN THE MIDDLE OF ALL

4   OF THIS -- FROM MR. GARCIA.   AND HE'S TALKING ABOUT DIFFERENT

5   THINGS.   HE'S ASKING ABOUT REIMBURSEMENT OF HIS TRAVEL

6   EXPENSES.

7      AND THEN HE SAYS, CAN YOU ALSO CLARIFY -- THIS IS A

8   QUESTION TO ROC NATION -- CAN YOU CLARIFY IF I AM TO DENY ALL

9   FUTURE EDITS OR WORK WHEN BEING REMOTE, AND THAT MEGAN IS

10  NOTIFIED  -- MEANING, AM I ESSENTIALLY WORKING REMOTELY AND BEING

11  EXCLUSIVE TO HER, AND THAT SHE'S GOING TO BE NOTIFIED.

12     SO, WHAT'S THE RESPONSE THAT COMES BACK FROM ROC

13  NATION.

14     "HI, THE REIMBURSEMENTS WERE APPROVED.

15     "PROCESS IS YOU TURN YOUR INVOICE IN.   I REVIEW, ROC

16  NATION.  AND THEN IT GOES TO MEG TO APPROVE."

17     SO, CONSISTENT WITH ALL OF THE PLEADINGS THAT WE'VE

18  POINTED OUT -- AND WHAT HE SAYS IN HIS AFFIDAVIT, THE

19  CONTEMPORANEOUS EVIDENCE SHOWS WE'RE SIMPLY ACTING AS A

20  CONDUIT FOR INFORMATION.

21     AND UNDER MARTINEZ AND ALL OF THE STANDARDS WHICH I'M

22  HAPPY TO GO THROUGH -- BUT WE'VE LAID THEM OUT IN OUR BRIEF --

23  NONE OF THE JOINT EMPLOYER STANDARDS ARE MET HERE.

24     WE DIDN'T CONTROL THE MANNER AND METHOD OF HIS WORK.

25     WE DIDN'T CONTROL THE HIRING AND FIRING.

1          AND HE KNEW IT.   AND HE CHOSE TO SUBMIT THAT EVIDENCE.

2          SO, YOUR HONOR, MY VIEW RESPECTFULLY IS NOT ONLY

3    SHOULD THIS COMPLAINT BE DISMISSED AS TO ROC NATION, BUT IN

4    EFFECT HE HAS ATTEMPTED TO AMEND HIS COMPLAINT THROUGH

5    SUBMITTING THIS -- THIS INFORMATION AND THESE EMAILS.

6          SO, IT SHOULD BE DISMISSED WITH PREJUDICE BECAUSE ANY

7    ATTEMPT TO AMEND WILL BE FUTILE.

8          SO, UNLESS YOUR HONOR HAS ANYTHING ELSE.

9          THE COURT:   ALL RIGHT.   I DO.

10         MR.  SIEV:  OH.

11         THE COURT:   IF THE COURT FINDS THOUGH THAT THE MOTION

12   TO DISMISS SHOULDN'T BE GRANTED, WOULD YOU ARGUE THAT THE

13   COURT SHOULD TRANSFER ON A FORUM OF NON-CONVENIENCE THEORY

14   ESSENTIALLY AND KEEP THE CASE TOGETHER?

15         MR. SIEV:   WELL -- WELL, CERTAINLY I THINK FOR JUDICIAL AND

16   PARTY ECONOMY IT SHOULD ALL BE -- IT SHOULD ALL BE TOGETHER.

17         IT'S THE EXACT SAME COMMON NUCLEUS OF OPERATIVE FACTS.

18         ALL THE FACTS ARE GOING TO BE THE SAME.  THERE WOULD BE

19   NO REASON TO HAVE IT BE HEARD IN THIS COURT AS WELL AS THE COURT

20   IN NEW YORK.

21         AND WE'VE SUBMITTED AFFIDAVITS INDICATING THAT ROC

22   NATION MAINTAINS AN OFFICE IN NEW YORK, THAT SOME OF THE

23   INDIVIDUALS WHO MIGHT BE THE SUBJECT OF DISCOVERY ARE WITHIN

24   THE SUBPOENA POWER OF THAT COURT.

25         SO, RESPECTFULLY WE DON'T THINK WE SHOULD BE PART OF

1    THE CASE.

2              IF WE ARE PART OF THE CASE, IT SHOULD BE IN NEW YORK.

3              BUT IF WE'RE NOT, AND THE CASE SURVIVES, AND THE

4    INDIVIDUALS IN NEW YORK FROM ROC NATION BECOME PARTIES FOR

5    THIRD-PARTY DISCOVERY, THEY'RE ALL THERE.   SO, COMPLETE RELIEF

6    CAN BE AFFORDED OR NOT AFFORDED AS THE CASE MAY BE.

7              THE COURT:   OKAY.   ALL RIGHT.   THANK YOU.

8              I'LL GIVE MR. ZAMBRANO THE LAST WORD ON THIS.   AND WE'LL

9    FINISH UP.

10              MR. ZAMBRANO:  THANK YOU, YOUR HONOR.

11              I'LL ADDRESS ROC NATION'S ARGUMENTS SINCE YOU JUST

12    HEARD THEM.

13              WITH REGARDS TO THE EMAIL THAT ROC NATION BELIEVES

14    SEALS THE DEAL IN THEIR WORDS, I'M -- IT ACTUALLY DOESN'T FOR THEM.

15              WHAT IT SHOWS IS THAT THE CONDUIT, SO TO SPEAK, IS

16    CONTROLLED BY A THIRD PARTY WHO INSERTED THEMSELVES IN THE

17    MOST -- PROBABLY THE MOST IMPORTANT PORTION OF BEING AN

18    EMPLOYEE, WHICH IS HOW DO I GET PAID.   HOW DO I GET REIMBURSED.

19              HOW DOES THE PERSON THAT SUPERVISED ME KNOW ABOUT

20    THESE THINGS.

21              IT'S THROUGH YOU.  OKAY.   I'M GOING TO GO THROUGH YOU

22    THEN.

23              FOR --  FOR ROC NATION TO GO WELL, YEAH.   WE DID THAT.

24    AND WE KNOW WE DID THAT.   AND THOSE ARE OUR EMAILS.   BUT IT'S

25    NOT REALLY AN EMPLOYMENT RELATIONSHIP.

1        WELL, THAT'S A QUESTION OF LAW.   IT'S A QUESTION FOR THE

2    COURTS.   IT'S NOT A QUESTION OF WHAT MR. – WHAT MR. GARCIA

3    THINKS.

4        THERE'S ALSO IN THEIR BRIEFING THAT HE SIGNED THIS

5    INDEPENDENT CONTRACTOR AGREEMENT.

6        THE LAW IS VERY CLEAR.   IT DOESN'T MATTER IF YOU SIGN AN

7    INDEPENDENT CONTRACTOR AGREEMENT.   IT'S A MATTER OF LAW.

8        SO, THERE IS EVIDENCE FOR PURPOSES OF THE PLEADING

9    STAGE THAT ROC NATION UNDER EITHER THE ECONOMIC REALITIES TEST,

10   EITHER THE ABC TEST OR WHATEVER WAGE ORDER WE WANT TO PICK,

11   THEY HAD SUFFICIENT CONTROL.   AND IT DOESN'T HAVE TO BE DAY TO

12   DAY FOR THEM TO BE A JOINT EMPLOYER.

13       THERE'S OTHER ARGUMENTS -- AND THAT GOES BOTH FOR THE

14   FEHA -- THE DISCRIMINATION CLAIMS AND ALSO THE WAGE AND HOUR

15   CLAIMS.

16       WITH REGARDS TO THE MOTION TO DISMISS AND PERSONAL

17   JURISDICTION ISSUE WITH MS. PEAT, DEFENDANT PEAT, IN HER OWN

18   REPLY SHE ADMITS THAT SHE IS IN CALIFORNIA FOR 15, 30 DAYS AT A TIME

19   REGULARLY THROUGHOUT THE YEAR.

20       EVERY LAW STUDENT KNOWS THE INFAMOUS DECISIONS OF

21   <u>WORLDWIDE VOLKSWAGEN,</u> DISCUSSING THEM IN CONTEXT, WHERE THE

22   -- THE MINIMUM CONTEXT IS ABOUT FAIRNESS.   IT'S ABOUT IS IT FAIR FOR

23   THAT DEFENDANT TO BE IN THE FORUM STATE.   WOULD IT BE

24   INCONVENIENT.  WOULD IT BE SOMETHING THAT THEY JUST COULDN'T

25   AFFORD.

1          DID THEY DO ENOUGH -- DID THE DEFENDANT DO ENOUGH FOR

2     THAT -- FOR THEM TO HAVE AVAILED THEMSELVES TO THAT PARTICULAR

3     STATE.

4          THERE IS VERY, VERY LITTLE THAT MS. PEAT TOLD US IN HER

5     REPLY AND IN HER DECLARATION THAT CONTRADICTS THAT.

6          SHE IS HERE REGULARLY FOR UP TO A -- MONTHS AT A TIME.

7          SO, THAT IS ENOUGH UNDER <u>WORLDWIDE VOLKSWAGEN</u>.

8          WITH REGARDS TO -- AND THERE IS -- I WANT TO PARCEL OUT

9     SOME THINGS SO THAT I'M CLEAR TO THE COURT AND COUNSEL.

10         I AM NOT DISPUTING THAT MY CLIENT SIGNED AN AGREEMENT,

11    THAT THERE ARE MANY VERSIONS -- EXCUSE ME, THERE'S MANY

12    PROVISIONS OF THAT AGREEMENT, AND THAT SOME OF THEM ARE

13    ENFORCEABLE BUT SOME OF THEM ARE NOT.

14         FOR INSTANCE, THE -- THE -- HIS REPRESENTATION IN A

15    CONTRACT THAT HE IS AN INDEPENDENT CONTRACTOR, I AM DISPUTING

16    THE LEGAL SIGNIFICANCE OF THAT.   THAT IS HIS EMPLOYMENT CLAIM.

17         I AM DISPUTING THAT AN ENFORCEMENT OF A FORUM

18    SELECTION CLAUSE ALONG WITH A CHOICE OF LAW PROVISION IS

19    ENFORCEABLE BECAUSE IT IS A JURISDICTIONAL ISSUE.

20         IF A CASE THAT IS BROUGHT BEFORE THIS COURT DOESN'T

21    MEET EITHER OF THE JURISDICTIONAL REQUIREMENTS OF THE

22    CONSTITUTION, EITHER A FEDERAL QUESTION OR DIVERSTIY, THE COURT

23    ON ITS OWN MOTION CAN KICK IT OUT OF THIS -- OUT OF THIS

24    COURTROOM.

25         THAT'S WHAT'S GOING TO HAPPEN IN NEW YORK.

1              NO MATTER WHAT DEFENDANT -- DEFENDANTS SAY.   THEY GO

2    IN LIKE HEY, WER'E HERE.   AND WE HAVE THIS CONTRACT.   THE COURT IS

3    GOING TO GO WELL, THAT'S NICE.   BUT YOU DON'T BELONG HERE.

4              JUST LIKE THE FEDERAL COURT WOULD DO ON A NON-DIVERSE

5    OR A NON-FEDERAL QUESTION CASE.

6              AND THAT IS THE EXCEPTIONAL CIRCUMSTANCE THAT THEY

7    QUOTE IS THE ONLY WAY THAT PROVISION SHOULDN'T BE APPLIED.

8              THANK YOU.

9              THE COURT:   THANK YOU.

10             COUNSEL, WE'LL DEEM THIS MATTER SUBMITTED AND WORK ON

11   AN ORDER PROMPTLY.

12             THANK YOU.

13             MS. HENDERSON:   THANK YOU, YOUR HONOR.

14             MR. SIEV:  THANK YOU, YOUR HONOR.

15             MR. ZAMBRANO:   THANK YOU, YOUR HONOR.

16             (PROCEEDINGS ADJOURNED AT 11:03 A.M.)

17

18

19

20

21

22

23

24

25

1

2                               TRANSCRIBER'S CERTIFICATE

3

4                                        DISCLAIMER

5           THE INTEGRITY OF THIS TRANSCRIPT MAY BE ADVERSELY AFFECTED

6                 DUE TO MUFFLED AND UNCLEAR AUDIO TRANSMISSION.

7                 I, Dorothy Babykin, attest that the foregoing proceedings provided to me

8    electronically were transcribed by me to the best of my ability.

9                                   /s/  *Dorothy Babykin*

10                                     Dorothy Babykin

11

12    Date:  2/12/2025

13

14

15

16

17

18

19

20

21

22

23

24

25

Dorothy Babykin Courthouse Services
1218 Valebrook Place   •   Glendora, CA 91740   •   626.963.0566   •   dotnisbet@aol.com